# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| XIAOLING CHE ) | Case No. 2024-cv-9239 |
| Plaintiff, ) | |
| ) | Hon. LaShonda A. Hunt |
| v. ) | |
| ) | |
| THE PARTNERSHIPS AND ) | |
| UNINCORPORATED ASSOCIATIONS ) | |
| IDENTIFIED ON SCHEDULE A, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF MOTION
## FOR TEMPORARY RESTRAINING ORDER

Xiaoling Che ("Plaintiff" or "Ms. Che"), by her attorney, submits this memorandum in support of her Motion for Temporary Restraining Order.

### I. INTRODUCTION

In accordance with the Court's 11/7/2024 and 11/13/2024 Orders [25] and [28], only the first defendant listed on Schedule A remains in this case. That party is listed on Schedule A as both Defendant #1 and Defendant #2 and is simply referred to herein as "Remaining Defendant."

Ms. Che is requesting temporary *ex parte* relief based on an action for patent infringement against Remaining Defendant. As alleged in Plaintiff's Complaint, Remaining Defendant offered for sale and sold unauthorized and unlicensed products, namely puzzle board products, that infringe Plaintiff's United States Patent D1,040,241 S ("the '241 Patent") through the fully interactive, commercial Internet store operating under at least the online marketplace account identified in Schedule A (the "Defendant Internet Store"). Remaining Defendant is reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Store through which Illinois residents can purchase infringing products. Plaintiff is forced to file this action to combat Remaining Defendant's infringement of its patented product, as well

1

as to protect unknowing consumers from purchasing infringing products over the Internet. Remaining Defendant's ongoing unlawful activities should be restrained, and Plaintiff respectfully request that this Court issue an *ex parte* Temporary Restraint Order.

## II. STATEMENT OF FACTS

### A. Ms. Che's Patent

Plaintiff Xiaoling Che is an individual residing at No. 049, Yuquanji Town, Yuquan Office, Dangyang, Hubei Province, China.

Ms. Che is the lawful assignee of all right, title, and interest in and to United States Patent D1,040,241 S ("the '241 Patent"), entitled PUZZLE BOARD. The '241 Patent was duly and legally issued on August 27, 2024. Attached as Exhibit 1 is a true and accurate copy of the '241 Patent.

Ms. Che's puzzle board products are known for their distinctive designs and are loved by customers at least because of the unique patented design(s) as claimed in the in the '241 Patent. A representative figure of the '241 Patent is reproduced as follows.

| Patent Number | Representative Figure(s) |
|---|---|
| US D1,040,241 | |

### B. Remaining Defendant's Unlawful Activates

On information and belief, Remaining Defendant knowingly and willfully makes, uses, offers for sale, sells, and/or imports into the United States for subsequent sale or use products that

infringe directly and/or indirectly the '241 Patent. Upon information and belief, Remaining Defendant resides in the People's Republic of China or another foreign jurisdiction. The accused products, whose URL links are shown in Schedule A, infringe at least the sole claim of the '241 Patent.

Infringers go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of stores. On information and belief, infringers regularly create new online marketplace accounts on various platforms. Infringers such as Remaining Defendant typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of enforcement efforts. On information and belief, Remaining Defendant maintains offshore bank accounts and regularly moves funds from its PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court.

### III. ARGUMENT

Remaining Defendant's purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop Remaining Defendant from benefiting from its wrongful use of Plaintiff's patented product and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, Remaining Defendant can and likely will register new e-commerce stores under new aliases, and move any assets to off-shore bank accounts outside the jurisdiction of this Court. Courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who

deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, *et seq.*, 28 U.S.C. §§ 1338(a)–(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Remaining Defendant since Remaining Defendant directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce store listed in Schedule A. Specifically, Remaining Defendant has targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more aliases, offers shipping to the United States, including Illinois, accepts payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, has sold infringing products to residents of Illinois. *See* Complaint at ¶¶ 2, 12, 17. *See NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624-627 (7th Cir. 2022); *see, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required); *Ford Global Techs., LLC v. New World Int'l Inc.*, 2016 U.S. Dist. LEXIS 78384, at *9-13 (E.D. Mich. June 16, 2016) (finding personal jurisdiction over defendant who sold products infringing design patents on its website and on an eBay storefront). In *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757-58 (7th Cir. 2009), the Seventh Circuit explained that, "Hemi stood ready and willing to do business with Illinois residents." "It is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois that justify exercising personal jurisdiction over Hemi in Illinois." *Id*. at 758. As such, specific jurisdiction is proper where a company "h[olds] itself out as open to do business with every state" and is "ready and willing to do business with [that state's] residents." *Id.*

Following *Hemi*, the Seventh Circuit in *Curry v. Revolution Labs., LLC* stated that:

> We are satisfied that Revolution has formed sufficient minimum contacts with Illinois. Like Hemi, Revolution sells its products only online through its website and third-party websites. Revolution's interactive website for the sale of its products requires the customer to select a shipping address. Illinois is among the "ship-to" options from which the customer must choose. Illinois residents purchasing Revolution's products also receive an email from Revolution thanking them for their business, confirming their order, and listing the Illinois shipping address.

*Curry v. Revolution Labs., LLC*, 949 F.3d 385, 399 (7th Cir. 2020). As such, Illinois courts have consistently exercised personal jurisdiction over e-commerce stores based on a single tortious act committed in Illinois. *See, e.g.*, *Volkswagen AG v. iman365-usa*, No. 18-cv-06611, 2020 U.S. Dist. LEXIS 34218, at *11 (N.D. Ill. Feb. 28, 2020) (finding personal jurisdiction over China-based eBay store); *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d at 909 ("defendants' offers to sell counterfeit Monster Energy Products on their Internet stores constitute tortious activity committed in Illinois sufficient to establish personal jurisdiction"); *Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, 2010 WL 4877708, at *7 (N.D. Ill. Nov. 23, 2010) ("As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant.").

Finally, fair play means that offshore e-commerce store operators that decide to offer for sale and sell products to consumers in the United States, including Illinois, must come to the United States and stand accountable for conduct relating to such sales. *Christian Dior Couture, S.A. v. Lei Liu, et al.*, 2015 U.S. Dist. LEXIS 158225, at *13 (N.D. Ill. Nov. 17, 2015). Defendant "certainly should not be surprised by the jurisdictional consequences of [its] actions", given that it had sufficient resources to purposefully avail itself of the Illinois market. *Id.* at *14 (quoting Hemi Grp., LLC, 622 F.3d at 758). Therefore, Remaining Defendant should have foreseen being subject to jurisdiction and haled into court in Illinois. Remaining Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Ms. Che substantial injury in the State of Illinois.

**A. Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*. Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id*. The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id*. (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

**B. Ms. Che Will Likely Succeed on the Merits**

Ms. Che is likely to succeed on the merits of its patent infringement claim. To establish a likelihood of success on the merits of its patent infringement claims, a plaintiff "must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Ms. Che satisfies these requirements.

**B.1. Remaining Defendant Infringed the '241 Patent**

A defendant is liable for patent infringement if it, "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States and patent invention during the term of the patent thereof." 35 U.S.C. § 271(a).

Identified puzzle board products from the commercial, interactive Defendant Internet Store listed on Schedule A infringe the '241 Patent using the test set forth in *Egyptian Goddess*, as an ordinary observer would consider the identified puzzle board products to be substantially the same as the patented design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008) (mandating use of the "ordinary observer" test when determining design patent infringement). There are few differences between the identified puzzle board products from the commercial, interactive Defendant Internet Store listed on Schedule A – and no difference that is significant. As a result, an ordinary observer would be deceived into thinking that the infringing product were the same as Ms. Che's puzzle board products. *Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1011 (N.D. Ill. 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008)).

Accordingly, Ms. Che is likely to succeed on the merits of its claim that Remaining Defendant infringes the '241 Patent.

**B.2. The '241 Patent Is Valid**

An issued United States patent is given a statutory presumption of validity. See 35 U.S.C. § 282; *Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.*, 46 Fed. App'x 964, 983 (Fed. Cir. 2002). Invalidity is generally proven by demonstrating that the patented invention is either anticipated or rendered legally obvious by the prior art. *See* 35 U.S.C. §§ 102–103. Ms. Che is not aware of any evidence that would tend to anticipate or render obvious the claims of the '241 Patent. Further, various secondary considerations support the non-obviousness of the '241 Patent. *See Wyers v. Master Lock Co.*, 616 F.3d 1231, 1245 (Fed. Cir. 2010) (discussing "secondary indicia of nonobviousness" such as commercial success and copying).

Ms. Che has enjoyed significant commercial success with her patented product, which provides secondary considerations suggesting that the '241 Patent is not obvious. *See, e.g., Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1344 (Fed. Cir. 2011) ("There was substantial evidence whereby a reasonable jury could have found copying and commercial success, and could have weighed these factors in favor of nonobviousness.").

7

Therefore, Ms. Che will likely be able to prove that the accused products infringed the '241 Patent, and Remaining Defendant will not be able to prove that the '241 Patent is invalid. Accordingly, Ms. Che is likely to succeed on her patent infringement claims.

**C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

Irreparable harm resulting from patent infringement is demonstrated when "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp*., 659 F.3d 1142, 1148 (Fed. Cir. 2011). At this stage, Plaintiff only needs to show that irreparable harm is likely. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co*., 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also, Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). Here, Plaintiff is likely to suffer two primary forms of irreparable harm: (1) loss of customers' goodwill and (2) reputational harm. Each of these harms, independently, constitutes irreparable harm and offers a basis on which preliminary relief should issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc*., 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quotation and citation omitted).

Remaining Defendant's infringement erodes and devalues Plaintiff's rights in its patented product, thereby risking injury to Plaintiff's goodwill and reputation and interfering with Plaintiff's ability to exploit the patented product. *See, e.g., Otter Prods. v. Anke Group Indus. Ltd*., 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (explaining that absent the requested TRO, plaintiff were likely to suffer "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents."); *see also, Nike, Inc. v. Fujian Bestwinn Industry Co.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an ex parte temporary restraining order and seizure order, [defendant's] importation, sale, and/or offers to sell its [design]... will result in immediate and irreparable injury to [plaintiff] in the form of loss of

control over its valuable intellectual property rights, loss of consumer goodwill, and interference with [plaintiff's] ability to exploit the [patents].").

Remaining Defendant's infringement of Plaintiff's patent by sale of the infringing products is likely to cause consumer confusion with genuine products from Plaintiff, resulting in harm to Plaintiff's reputation and loss of customers' goodwill. As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also, Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on *Reebok* in finding irreparable harm).

A causal nexus exists between Remaining Defendant's infringement and each of the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013).

Here, Remaining Defendant's infringing use of the '241 Patent in the infringing product is a substantial, if not the exclusive, reason for consumer demand of the infringing products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are 'relatively simple,' in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products.").

Finally, because Remaining Defendant, upon information and belief, resides in the People's Republic of China or another foreign jurisdiction with no U.S. presence, any monetary judgement is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, *citing O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "all three defendants

9

are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages"). Furthermore, other district courts have found that money damages were insufficient in similar cases involving foreign infringers. *See, e.g., Aevoe Corp. v. AE Tech Co.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Otter Prods.*, 2013 WL 5910882, at *2 ("because Anke has no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgement against Anke"); *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Nike*, 166 F.Supp.3d, at 1179 ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn").

For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

**D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Remaining Defendant will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As a willful infringer, Remaining Defendant is entitled to little equitable consideration. This is because any harm to Remaining Defendant that could possibly result from a temporary restraining order is self-inflicted. Remaining Defendant took a calculated risk when it engaged in patent infringement. Under such circumstances, courts refuse to assign any "harm" to the defendant because it assumed the risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) ("the preliminary

record suggests that [defendant's] losses were the result of its own calculated risk in selling a product with knowledge of [plaintiff's] patent").

Through its unauthorized sales, Remaining Defendant has been profiting from the accused infringing products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Plaintiff has granted a license or permission to Remaining Defendant with respect to Plaintiff's patented product. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Remaining Defendant's actions. As such, equity requires that Remaining Defendant be ordered to cease its unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

**A. Temporary Restraining Order Immediately Enjoining Remaining Defendant's Unauthorized and Unlawful Use of the '241 Patent Is Appropriate**

Plaintiff requests a temporary injunction requiring Remaining Defendant to immediately cease making, using, offering for sale, selling, and importing the products set forth in Schedule A to the Complaint and any other products not authorized by Plaintiff and that infringe the '241 Patent. Such relief is necessary to stop the ongoing harm to Plaintiff's control over its rights in the '241 Patent, its reputation, and associated goodwill, as well as harm to consumers, and to prevent Remaining Defendant from continuing to benefit from its unauthorized use of the '241 Patent. The need for *ex parte* relief is magnified in today's global economy where infringers can operate anonymously over the Internet. Plaintiff is currently unaware of both the true identity and location of Remaining Defendant. Many courts have authorized immediate injunctive relief in similar cases involving the sale of infringing products. *See, e.g., Nike, Inc. v. Fujian Bestwinn Industry Co.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016)

**B. Preventing the Fraudulent Transfer of Assets Is Appropriate**

Plaintiff requests an *ex parte* restraint of Remaining Defendant's assets so that Plaintiff's right to recovery from Remaining Defendant's infringement is not impaired. Issuing an *ex parte* restraint will ensure Remaining Defendant's compliance. If such a restraint is not granted in this case, Remaining Defendant may disregard its responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, Remaining Defendant holds most of its assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its patent infringement claim. Plaintiff's Complaint seeks, among other relief, that Remaining Defendant account for and pay to Plaintiff due to Remaining Defendant's unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Remaining Defendant's activities, and that, unless Remaining Defendant's assets are frozen, Remaining Defendant will likely hide or move its ill-gotten funds to off-shore bank accounts. Accordingly, an asset restraint is proper.

**C. Plaintiff Is Entitled to Expedited Discovery**

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007). (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Remaining Defendant uses for its sales operations. The expedited discovery requested in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). The Court's seizure and asset restraint may have little meaningful effect without the requested relief.

Accordingly, Plaintiff respectfully requests that expedited discovery be granted related to:

a. the identity and location of Remaining Defendant, its officers, agents, servants, employees, attorneys, and any persons acting in concert or participation with it, including all known contact information and all associated e-mail addresses;

b. the nature of Remaining Defendant's operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with the Defendant Internet Store, and Remaining Defendant's financial accounts, including Remaining Defendant's sales and listing history related to its Defendant Internet Store; and

c. any financial accounts owned or controlled by Remaining Defendant, including its officers, agents, servants, employees, and any persons acting in concert or participation with it, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, PayPal, Inc. ("PayPal"), eBay, Alipay, Alibaba, AliExpress, Ant Financial Services Group ("Ant Financial"), Amazon Pay, Temu, Walmart, Target, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard, VISA, Discover, and American Express).

## **V. BOND**

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989).

Because of the strong and unequivocal nature of Plaintiff's evidence of patent infringement, Plaintiff respectfully requests this Court require Plaintiff to post a bond of no more than five thousand dollars ($5,000) in total.

## VI. CONCLUSION

Due to the strong likelihood of success on the merits of Plaintiff's case and the irreparable harm that would result without a temporary restraining order, Plaintiff respectfully requests that its temporary restraining order be immediately granted.

Dated: November 19, 2024                                        Respectfully submitted,

                                                                 /s/ Allen Justin Poplin
                                                                 Allen Justin Poplin, NDIL 21598
                                                                 **AVEK IP, LLC**
                                                                 7285 W. 132nd Street, Suite 340
                                                                 Overland Park, KS 66213
                                                                 Phone: 913-303-3841
                                                                 jpoplin@avekip.com
                                                                 *Attorney for Plaintiff*